1

THE LAW OFFICES OF C.R. HYDE, PLC
**CHARLES R. HYDE**
ATTORNEY AT LAW
**2810 N. SWAN RD., SUITE 160**
TUCSON, ARIZONA  85712
TELEPHONE: (520) 270-1110
**SBA # 22512**
**Attorney for Debtors**

2

3

4

5

6

7
UNITED STATES BANKRUPTCY COURT

8
DISTRICT OF ARIZONA

9
In re:

In Proceedings under Chapter 11

10
Case No. 4:16-bk-12285-SHG

11
ARTHUR W GRIMM III and CYNTHIA GRIMM,

**DEBTORS' SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION DATED JULY 16, 2018**

12

13

14
Debtors.

15
**CHAPTER 11 PLAN OF REORGANIZATION FOR DEBTOR**

16

17
TABLE OF CONTENTS

18
I.    Introduction……………………………………………………...………3

19

20
II.   Definitions, Rules of Interpretation, and Computation of Time
      A.   Rules of Construction……………………………………………………4
      B.   Rules of Interpretation………………………………………..………...4
      C.   Computation of Time…………………………………..…………………5
      D.   Definitions………………………………………………………………...5

21

22

23
III.  Classification and Treatment of Claims and Interests
      A.   Unclassified Claims……………………………………………………11
      B.   Classified Claims…………………………………………………...…..13

24

25
IV.   Executory Contracts and Unexpired Leases…………………….…………20

26

27
V.    Means for Executing and Implementing the Plan
      A.   Means of Funding the Plan……………………………………………21
      B.   Causes of Action…………………………………………………………26
      C.   Objections to Claims and Interests………………………………………27
      D.   Vesting…………………………………………………………………27

28

VI.    Distribution under the Plan
      A.  Manner of Payments………………………………………………28
      B.  No Distributions to Disputed Claims…………………………………28
      C.  Post-Petition Interest, Fees, and Costs………………………………..28

VII.    Effect of Plan on Claims and Interests
      A.  Effect of Confirmation…………………………………………………..29
      B.  Debtors' Authority to Compromise and Settle…………………..……30
      C.  Right of Setoff…………………………………………………………30

VIII.  Other Provisions
      A.  Binding Effect…………………………………………………………..31
      B.  Revocation, Withdrawal, or Non-Consummation……………………31
      C.  Plan Modification………………………………………………………31
      D.  Severability of Plan Provisions………………………………………32
      E.   Consequences of Default……………………………………………33
      F.   Reorganized Debtor Action…………………………………………33
      G.  Post-Confirmation Employment of Professionals………………..…33
      H.  Payment of Statutory Fees……………………………………………33
      I.   Documentation of Plan Implementation………………………………34
      J.   Terms of Injunctions or Stays…………………………………………34
      K.  Governing Law…………………………………………………………35

IX.    Retention of Jurisdiction………………………………………………..35
X.    Request for Confirmation and Recommendation………………………38

2

## I. Introduction and Summary of the Plan

Arthur W. Grimm III and Cynthia Grimm ("Debtors") hereby propose the enclosed chapter 11 plan of reorganization (the "**Plan**") under section 1121 of chapter 11 of title 11 of the United States Bankruptcy Code (the "**Bankruptcy Code**") for the resolution of the Debtors' outstanding creditor claims.

The Plan provides for payment to creditors of their claims from income generated during the course of the bankruptcy case and from new-value contributions from other individuals as described in further detail herein. The Disclosure Statement (the "**Disclosure Statement**"), contemporaneously filed with this Plan, contains a summary and analysis of the Plan and discusses the Debtors' history, business, properties, results of operations, risk factors, and related matters. The Debtors are the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code. All capitalized terms used in the Plan are defined either in section 101 of the Bankruptcy Code or hereinafter in Section "D" of this Plan.

All holders of Claims are encouraged to read the Plan and the Disclosure Statement in their entirety before voting to accept or reject the Plan or objecting to the confirmation of this Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and rule 3019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Debtors reserve the right to alter, amend, modify, revoke or withdraw this Plan prior to its confirmation.

3

## II.     Definitions, Rules of Interpretation, and Computation of Time

### A.     Rules of Construction

All definitions set forth below are incorporated in the Plan for all purposes.  Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or Bankruptcy Rules.  Whenever the context requires, such terms shall include the plural and the singular.

### B.     Rules of Interpretation

For purposes of the Plan (a) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that it shall be substantially in such form or substantially on such terms and conditions; (b) any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or as it may be amended, modified, or supplemented; (c) unless otherwise specified, all references in the Plan to Sections, Articles, Appendices, Schedules, and Exhibits are references to Sections, Articles, Schedules, Appendices and Exhibits of or to the Plan; (d) the words "herein" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (e) captions and headings of Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the

4

interpretation of the Plan; and (f) the rules of construction set forth in Section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

**C.**     **Computation of Time**

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**D.**     **Definitions**

Terms used in this Plan have the meaning specified in the Bankruptcy Code and Rules, if defined therein, unless the following definitions apply or the context clearly requires otherwise.  The following terms have the following meanings whenever used in the Plan:

Section 1.1     Definitions

As used in the Plan, the following terms shall have the respective meanings specified below:

"**Administrative Expense**" means any right to payment constituting a cost or expense of administration of any of the case under sections 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the estates of the Debtors, any actual and necessary costs and expenses of operating the business of the Debtors, any indebtedness or obligations incurred or assumed by the Debtors in connection with the conduct of its business, amounts owed to vendors providing goods and services to the Debtors during the case, and

5

tax obligations incurred after the Commencement Date, and all compensation and reimbursement of expenses to the extent Allowed by the Bankruptcy Court under sections 328, 330, 331 and/or 503 of the Bankruptcy Code, whether fixed before or after the Effective Date .

"**Allowed**" means, with reference to any Claim or Administrative Expense, (a) allowed pursuant to the Plan, (b) not Disputed, (c) listed by the relevant Debtor in its Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of claim has been filed, (d) compromised, settled, Allowed or otherwise resolved pursuant to a Final Order, (e) if Disputed, has been allowed by a Final Order, or (f) asserted by a timely filed proof of Claim or Administrative Expense (or motion for Administrative Expense) as to which no timely objection has been or is interposed (as determined in accordance with Section 6.1 of the Plan or any applicable period of limitation fixed by the Bankruptcy Code, or the Bankruptcy Rules, or the Bankruptcy Court); provided, however , that Claims allowed pursuant to an order of the Bankruptcy Court solely for the purpose of voting to accept or reject the Plan shall not be considered "Allowed Claims" hereunder.

"**Claim**" means a "Claim" as defined in section 101(5) of the Bankruptcy Code, against any one or more of the Debtors, or their property, whether or not asserted.

6

"**Class**" means a category of holders of Claims or Equity Interests as set forth in Article III of the Plan, classified by the Plan pursuant to section 1123(a)(1) of the Bankruptcy Code.

"**Commencement Date**" means the date of filing of Debtors' voluntary petition for relief under the Bankruptcy Code.

"**Confirmation Date**" means the date upon which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket in the Chapter 11 Case.

"**Confirmation Hearing**" means the hearing held by the Bankruptcy Court to consider confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

"**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

"**Debtors**" means both Debtors, collectively, including, where applicable, such entity or persons in their capacity as debtor-in-possession in the Chapter 11 Case pursuant to sections 101, 1107(a) and 1108 of the Bankruptcy Code.

"**Deficiency Claim**" means that portion of a Claim secured by a lien on property in which the estate has an interest that is determined, pursuant to section 506(a) of the Bankruptcy Code or through agreement, to exceed the value of the claimant's interest in such property.

"**Disclosure Statement**" means the disclosure statement relating to the Plan as amended from time to time, including, without limitation, all exhibits and schedules

7

thereto, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

"**Disputed Claim**" means any Claim to which the Debtors have objected.

"**Effective Date**" means the first day on which the Plan shall become effective in accordance with its terms and the Confirmation Order. The Effective Date shall be the 1st day of the month following the Confirmation Date.

"**Plan**" means, the chapter 11 plan of reorganization for the Debtors, including all applicable exhibits and schedules annexed hereto or associated herewith that shall be filed with the Bankruptcy Court, as altered, amended or modified from time to time in accordance with the terms hereof, the Bankruptcy Code and the Bankruptcy Rules.

"**Priority Tax Claim**" means any Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(I) and 507(a)(8) of the Bankruptcy Code.

"**Pro Rata Share**" means the proportion that the amount of any Claim in a particular Class against the Debtors bear to the aggregate amount of all Claims in such Class against that particular Debtors, including the estimated Allowed amount of any Disputed Claims in such Class.

8

"**Secured Claim**" means, pursuant to section 506 of the Bankruptcy Code, that portion of a Claim that is (a) secured by a valid, perfected and enforceable security interest, lien, mortgage or other encumbrance, that is not subject to avoidance under applicable bankruptcy or non-bankruptcy law, in or upon any right, title or interest of a Debtors in and to property of the relevant estate, to the extent of the value of the holder's interest in such property as of the relevant determination date, or (b) Allowed as such pursuant to the terms of the Plan (subject to the Confirmation Order becoming a Final Order).

Section 1.2    Interpretation and Construction of Terms.

The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan. Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter.

If a Claim is to be "reinstated" under the terms of the Plan, it shall mean that such Claim shall be rendered unimpaired in accordance with section 1124 of the Bankruptcy Code, notwithstanding that the holder of such Claim shall not have any right to enforce, with regard to any default occurring prior to the Effective Date, any contractual provision or applicable non-bankruptcy law that entitles the holder of such Claim to demand or receive payment of such Claim prior to its stated maturity date from and after the

9

occurrence of a default, and (i) the holder of the Claim shall retain all of its legal rights respecting the Claim, (ii) the applicable Debtors, as reorganized, shall remain liable for the Claim, and (iii) the applicable Debtors, as reorganized, shall retain any and all defenses respecting the Claim.

Any term used in the Plan that is not otherwise defined shall have the meaning ascribed to that term, if any, in the Bankruptcy Code.

Except as otherwise expressly provided herein, all references to "$" or "dollars" shall be deemed to be references to the lawful currency of the United States of America.

### III.     Classification and Treatment of Claims and Interests

All Claims and Interests, except administrative expense and priority tax claims, are placed into classes as set forth below.  A Claim or Interest is placed in a particular class, only to the extent that the Claim or Interest falls within the description of that class, and is classified in all other classes to the extent that any portion of the Claim or Interest falls within the description of such other class.

A Claim or Interest is placed into a particular class for all purposes, including voting on this Plan, confirmation, and receiving distributions pursuant to this Plan, only to the extent that such Claim or Interest is an Allowed Claim in that class, and such claim has not been paid, released, or otherwise settled prior to the Effective Date.  The establishment of particular Classes or categories of Unclassified Priority Claims does not mean or imply that there are any Allowed Claims that fall into each such Class or category, and the

10

Debtors may later contend there are no such Allowed Claims in any given Class or category.

**A.      Unclassified Claims**

Pursuant to 11 U.S.C. § 1123(a)(1), Administrative Expense Claims pursuant to section 507(a)(2) and (a)(4)(A) of the Bankruptcy Code are not classified under the Plan. These Claims are not considered impaired and holders of such Claims do not vote on the Plan.  They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code.

**1.      Administrative Expenses**

**Generally**.  Except to the extent that a Holder of an Administrative Expense Claim agrees to different treatment, or as otherwise provided for in the Plan, the Holders of Administrative Expense Claims shall receive cash on account of and in the amount of such Administrative Expenses.  Payment of Administrative Expenses shall be made: (a) on the Effective Date; or (b) or as otherwise provided for in the Plan.  A notice setting forth the Administrative Expense Bar Date shall be filed on the Bankruptcy Court's docket.

**Professional Compensation**.  Professionals employed at the expense of the Estate and entities who may be entitled to reimbursement or the allowance of fees and expenses from the Estates pursuant to section 503(b)(2)-(6) of the Bankruptcy Code shall receive cash in the amount awarded to such professionals and entities at such times and only in

11

accordance with a Final Order entered pursuant to section 330 or 503(b)(2)-(6) of the Bankruptcy Code.

Any application for payment of an Administrative Expense shall be filed within sixty days of the Effective Date (the "**Administrative Expenses Bar Date**"), or such other date as may be fixed by the Bankruptcy Court. The application for payment of an Administrative Expense shall be paid by or on behalf of the Debtors or Reorganized Debtors on the (i) date of the order granting such award becomes a Final Order, (ii) or as soon thereafter as is practicable, (iii) or such other terms as may be mutually agreed upon by the Professional and the Debtors or Reorganized Debtors.

The anticipated Administrative Expenses on the Effective Date include (1) counsel's outstanding fees in the minimum amount of $60,000.00; however, this amount may vary depending on the plan confirmation process and related proceedings; (2) the Debtors' accountants anticipated outstanding fees in the maximum amount of $10,000.00, which amount may vary depending on the circumstances in certain contested matters related to this case. The anticipated Administrative Expenses are an estimate and the Debtors reserve all rights to submit additional Administrative Expenses to the Bankruptcy Court for approval.

Post-confirmation, the Debtors' counsel and co-counsel will continue to incur fees, and it is anticipated the Debtors' accountant will continue to be employed and incur fees. The applicable Debtor or Reorganized Debtor shall assume all post-petition liabilities, fees and expenses for, and make payment in the ordinary course to any Professional retained by

12

the applicable Debtors or Reorganized Debtors as an ordinary course professional pursuant to that certain order of the Bankruptcy Court.

**U.S. Trustee's Fees**.  Notwithstanding any provision in the Plan to the contrary, all fees and charges assessed against the Estates pursuant to 28 U.S.C. § 1930 shall be paid on or before the Effective Date.  The Debtors will file with the Court and serve on the U.S. Trustee a quarterly financial report for each quarter that the Case remains open in the format prescribed by the U.S. Trustee, and the Debtors will pay such quarterly fees as due for each post-confirmation quarter the case remains open.

### 2.  Priority Tax Claims

As provided by section 1129(a)(9)(C) of the Bankruptcy Code, priority tax claims under section 507(a)(8) of the Bankruptcy Code must be paid in full, in cash with interest at the statutory rate from the Petition Date.  Payments shall be made on Priority tax claims in full on the Effective Date.  All post-petition taxes will be paid when due in the ordinary course of business.

### B.  Classified Claims

Claims against the Debtors, are classified for all purposes, including voting (unless otherwise specified), confirmation, and distribution pursuant to the Plan, as follows:

| Class | Description | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| 1 | Priority Tax Claims | Unimpaired | No |
| 2 | Secured Claim of Wells | Unimpaired | Yes |

13

| | | | |
|---|---|---|---|
| | Fargo – River Road | | |
| 3 | Secured Claim of Wells Fargo – ("Bankard" Property) | Impaired | Yes |
| 4 | Lease Cure Claim of Mastick Trust | Unimpaired | No |
| 5 | General Unsecured Claims | Impaired | No |
| 6 | Contingent, Unliquidated and Disputed Claims | Unimpaired | No |
| 7 | Debtors' Interest | Unimpaired | No |

### Class 1 – Priority Tax Claims

(a) **Impairment and Voting**. Class 1 is unimpaired under the Plan. Class 1 is not entitled to vote to accept or reject the Plan.

(b) **Class Members**. Class 1 could include a claim from the Internal Revenue Service (Proof of Claim #3) because there appears to be an unfiled 2012 return which may result in priority status when and if the Claim is amended.

(c) **Distributions**. Class 1 Claims shall be paid in full at the statutory rate of interest for such claims over a period of twenty four months commencing the first full month after the effective date with each payment being the same amount.

14

**Class 2 - Secured Claim of Wells Fargo – River Road**

(a) **Impairment and Voting**.  Class 2 is unimpaired under the Plan.  Class 2 is not entitled to vote to accept or reject the Plan.

(b) **Class Members**.  Class 2 includes the Secured Claim of Wells Fargo Bank, N.A. ("Wells Fargo") ("Proof of Claim #2") secured by the Debtors' real property at 115 S. River Road, Nogales, AZ 85621 (the "River Road Property").  Pursuant to Proof of Claim #2, Wells Fargo has a secured claim in the amount of $103,756.27 (the "Claim Amount"), including the amount of $1,842.67 in arrears (the "Arrearage Amount") as of the Petition Date.

(c) **Distributions**.  Debtors shall pay the Arrearage Amount within fourteen (14) days of the Effective Date if it has not already been paid.  The Claim Amount shall continue to be paid pursuant to the underlying Note and Deed of Trust and not modified by the Amended Plan.

**Class 3 – Nonconsensual Judgment Lien Secured Claim of Wells Fargo Bank, N.A.**

(a) **Impairment and Voting**.  Class 3 is unimpaired under the Plan.  Class 3 is not entitled to vote to accept or reject the Plan with the following described exceptions, those exceptions being the same as those exceptions that could render the holders of Class 3 unimpaired.

15

(b) **Class Members**.  Class 3 consists of a claim amount asserted by Wells Fargo Bank, N.A. ("Wells Fargo") ("Proof of Claim #9") in the amount of $53,070.59 (the "Claim Amount").  Wells Fargo identified its Class 3 claim as unsecured claim, despite the fact that Wells Fargo's claim was reduced to judgment more than ninety (90) days prior to the order for relief in this matter and duly recorded at the Santa Cruz County Recorder's Office.  Debtors reserve the right to file an objection to Proof of Claim #9 or motion pursuant to 11 U.S.C. 522(f) to the extent that it impairs an exemption asserted by the Debtors.  Debtors do not intend to file an objection to the holder of the Class 3 claim because despite Wells Fargo asserting that its claim was unsecured Wells Fargo's recorded judgment lien.  Since the treatment of Class 3 does not provide for an interest component, and the Amended Plan is a 100% Plan, the estate is not going to be harmed if Debtor does not "take advantage" of the failure by Wells Fargo to identify itself as secured.

(c) **Distributions**.  The Class 3 Claim shall be entitled to payment as a member of Class 3 and paid upon sale of the non-exempt real property fully securing its claim. Debtor shall satisfy Wells Fargo's Class 3 claim in full upon Wells Fargo's receipt of the net sale proceeds from the sale of the Bankard property which that is to be conveyed to Debtors' estate from the transferee, Sherman Montgomery, in full satisfaction of the estate's contingent claim against Montgomery pursuant to 11 U.S.C. §§ 544 and 545.  No interest shall accrue on the Class 3 claim as of the order for relief and the Class 3 claim shall only be paid the allowed amount of its claim as provided for in its Proof of Claim.  In the unlikely event that the Class 3 claim is not satisfied in full through the timely sale of the

16

Bankard property, any remaining balance shall be permitted to an allowed Class 5 general unsecured claim and shall be paid in full along with the holders of allowed Class 5 claims.

**Class 4 – Lease Cure Claim of Mastick Trust**

**(a) Impairment and Voting.** Class 4 is unimpaired under the Plan. Class 4 is not entitled to vote to accept or reject the Plan.

**(b) Class Members.** Class 4 includes the disputed claim of the Annette Suzy Mastick Revocable Living Trust ("Mastick Trust"). The Mastick Trust filed Proof of Claim #5-2 which Debtors identify as contingent, disputed and unliquidated on their schedules and in their written objection to Claim #5-2. Mastick Trust's claim stems from an unexpired, multi-decade ground lease that has Mastick Trust as the landlord and Debtors as the tenant. The Mastick Trust claim was first captured by Proof of Claim #5, and was filed on December 14, 2017, and since amended on April 5, 2018. Under penalty of perjury Mastick Trust asserts in its most recent Proof of Claim #5 that it is owed $500,000.00. The Mastick Trust has taken the position that there exist environmental contamination concerns related to an underground storage tank that, if proven true, could render the lease "unassumable." Debtors disagrees with the arguments and analysis of the relevant authority that Mastick Trust believes to control this situation. It appears that more than two environmental experts agree that there is no underground storage tank release. Regardless of whether environmental liability is determined, such liability is mutually exclusive from Proof of Claim #5-2. Debtor asserts that the claim asserted by Proof of Claim #5-2 is laughably overstated, worthy of sanctions and demonstrates a clear

17

inability to grasp how 11 U.SC. § 365 limits Mastick's claim in the event of rejection of the Mastick Lease.  Additionally, now that the Mastick Lease is to be assumed upon Debtors' cure of the same, Proof of Claim #5-2 is further limited and, from Debtors' perspective, zeroed out.  The Debtors have objected to Proof of Claim #5-2.  To the extent any part of Proof of Claim #5-2 is liquidated and ordered payable as a condition to Debtors' assumption shall have an allowed Class 4 Claim.  Any portion of Claim #5-2 that is not administrative in nature or not ordered to be paid as a condition of assumption shall be paid as a general unsecured claim and have an allowed Class 5 Claim.  As of July 16, 2018, Debtor believes that all pre-petition monetary cure payments which would have comprised Class 4 have been paid.

**(c) Distributions.**  Two letters were addressed to Debtors from Mastick Trust's CPA on February 6, 2018.  Each of the two letters identifies the cure amounts due for a separate period of time based on the consumer price indexes to be used in determining base rent changes under the Mastick Lease.  One letter contemplates the base rent and allocable taxes for the period of January 2014 through December 2016.  The other letter contemplates the base rent and allocable taxes for the period of January 1, 2017 through February 2018.  Debtors have timely paid the amounts based on the math Lenny Lizardi told the Court that he would prepare, and the amounts due for those periods of time was paid by separate check.  Mastick accepted those checks, although under a reservation of rights in early April 2018 because Mastick Trust believed more amounts were owed.  Any amounts determined to be due and owing in addition to what has already been paid shall

18

be paid as soon as the correct amount is determined by the Court or agreed upon by the parties.

**<u>Class 5 – General Unsecured Claims</u>**

(a) **Impairment and Voting**.  Class 5 is impaired by the Plan.  Each Holder of an Impaired Allowed General Unsecured Claim is entitled to accept or reject the Plan.

(b) **Class Members**.  Class 5 includes all Allowed Claims in the Debtors that are not entitled to priority, are not secured by an interest in the Debtors' property, and are not contingent, unliquidated, disputed or subject to treatment of another class of claims set forth herein.  A complete list of all Class 5 claims is set forth in the Disclosure Statement at Page 24.

(c) **Treatment**.  The holders of allowed Class 5 claims shall receive equal monthly payments in the amount of $400.00 beginning on the first day of the thirteenth (13th) full month following the effective date and until December 31, 2021.  Commencing January 1, 2022 and each month thereafter until all Class 5 claims are paid in full, Debtors shall pay the monthly amounts of $800.00.  In the event that the Bankard property produces net proceeds in excess of all closing costs and the secured claim of the holder of a Class 3 claim, the net proceeds shall be disbursed to Class 5 so long as there remain no outstanding administrative expense claims due at the time of the Bankard closing.

19

## Class 6 – Contingent, Unliquidated, and Disputed Claims

(a) **Impairment and Voting**. Class 6 is impaired by the Plan. Class 6 is not entitled to vote to accept or reject the Plan.

(b) **Class Members**. Class 6 consists of claims that are either contingent, unliquidated, disputed, or any combination of the foregoing claims in the Debtors.

(c) **Treatment**. Class 6 shall receive no distribution under the Plan. In the event that any claims in Class 6 become liquidated, noncontingent and undisputed they shall be entitled to treatment as a holder of an allowed Class 5 claim. Any Class 6 claim that is allowed and permitted to participate as a holder of an allowed Class 5 claim shall not receive any distribution unless and until all claims held by the Debtor against the holder of that Class 5/6 claim have been liquidated and offset.

## Class 7 – Debtors' Interest

(a) **Impairment and Voting**. Class 7 is Impaired by the Plan. The Debtors are not entitled to vote to accept or reject the Plan.

(b) **Treatment**. On the Effective Date, all estate property shall vest in the Debtor.

## IV. Executory Contracts and Unexpired Leases

The Debtors shall assume, or assume and assign, as of the Effective Date each Executory Contract and Unexpired Lease listed in <u>Schedule G</u>, as amended, whether written or oral, except as otherwise provided for in the Plan. Assumption means that the Debtors have elected to continue to perform obligations under such contracts and leases,

20

and to cure defaults of the type that must be cured under the Code, if any.  In the event that any particular lease has not been assumed by the entry of a separate order, entry of the Confirmation Order shall constitute approval of such assumption pursuant to sections 365 and 1123 of the Bankruptcy Code.  Debtors reserve all rights to assume and subsequently assign any and all leases which the Debtors are a party to.

After the Effective Date, the Debtors may enter into new leases of Property without approval by the Court in the ordinary course of business as is necessary and proper to bring additional income into the Estate.  Such new leases will be in writing, and pre-petition leases may be formalized in new written leases.

Unless a rejection motion is filed prior to the Confirmation Hearing, no executory contracts or unexpired leases will be rejected.

Any individual or entity that is a party to an executory contract or unexpired lease assumed pursuant to the Plan who objects to such assumption must file with the Court a written statement stating the basis for the objection.  This statement must be filed and served within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.  Any individual or entity that fails to file timely and serve such a statement will be deemed to have waived any objection to the proposed assumption.

**V.      Means for Executing and Implementing the Plan**

**A.      Means of Funding the Plan**

The Plan will be funded from a variety of sources:

21

1.  Debtor's net business income from Big Art's Service Station, LLC may be used to fund Plan obligations for Classes 1, 2, 4 and 5;

2.  Net sale proceeds from the sale of that real property at Bankard avenue shall be applied as follows:

    a. After satisfying closing costs, statutory encumbrances, and the secured claim of Class 3, all then remaining net sale proceeds shall be disbursed to creditors in order of priority, with any unpaid administrative claims in this matter being paid first and in full.

    b. Debtors' amended schedule A asserts that the value of the Bankard property is $70,000.00, which would provide for net proceeds of approximately $20,000.00 to Class 5 claimants upon sale to partially satisfy Class 5 obligations as Debtor believes that by the time Bankard is sold that administrative claims will have been paid, that there are de minimis Class 1 priority claims at this time, that the Class 2 claim will be paid from Debtors' regular net income from Big Art's, LLC, rental income from the River Road property or social security income.

3.  Debtor's monthly passive income from the sublease of commercial property in connection with the Lease may be used to fund Plan obligations for Classes 1, 2, 4 and 5. Debtor is hoping to sublease the improved retail building for a lump sum of $250,000.00. Debtor is not amending the projections to contemplate this possibility

22

because it is too early but the proposal contemplates the conveyance of Debtors' interest in that portion of the Mastick Lease that includes the non-service station commercial property.

4. Debtor's social security income may be used to fund Plan obligations for Classes 1, 2, 4 and 5. The value of this monthly amount is $2,000.00, as reflected in the Debtors' Plan Projections.

5. Debtor's monthly passive income from the lease of residential property at its River Road homestead may be used to fund Plan obligations for Classes 1, 2, 4 and 5. Debtor estimates the monthly value of future rent to be $500.00 as reflected in its Plan Projections.

6. To the extent necessary, if Debtors do not have enough cash on hand, and in their business judgment Debtors shall utilize proceeds from a post-petition loan in an amount not to exceed $75,000.00 from Sherman Montgomery ("Montgomery") to satisfy any effective date payments such as administrative claims, or cure payments that may be a condition to assumption of the Lease associated with Class 4. The Note is attached hereto as Exhibit "F" and is also an exhibit to an amended Motion to Incur Debt to reflect the unsecured quality of the loan. The Montgomery loan will accrue interest at 4% per annum and accrued interest shall be paid quarterly through the conclusion of the draw period specified in the Note. Upon expiration of the Draw Period, the Note shall be reamortized and paid over a period of five (5) years. Since the Draw Period spieficied in

23

the note is seven (7) years in length, the Debtor's Projections provide for only quarterly

interest payments in the maximum possible amount which would be $750.00.

7. As provided for in paragraph 2 above, Montgomery shall convey by

quit claim deed the Bankard Property back to the Debtors by quit claim deed upon the

Effective Date in full satisfaction of any claim the Estate would have against him for under

Subchapter 5 of the Bankruptcy Code. See 11 U.S.C. §§ 544 and 545. Montgomery shall

also not assert a claim against the estate for any and all prepetition claims he holds, and

shall additionally forever waive the same.

8. Monetary Damages or monetary sanctions recovered by Debtor in

connection with the Lease and the Mastick Claim due to those actions taken by Mastick

within and without the bankruptcy matter that sound in tort, contract, or bankruptcy law

including but not limited to violations of 11 U.S.C. § 362(k) and 28 U.S.C. § 1927 and

Bankr. R. Fed. Pro. 9011.

9. ADEQ Baseline Assessment Program and state monies relating to

removal of underground storage facilities, which should include reimbursement to the

Debtor or Big Arts, LLC for the costs already incurred for the services of BEM and

perhaps Blaes.

10. Dispensing equipment needing to be replaced or maintenance shall be

paid by any of the following: fuel supplier's with no expectation of

repayment, fuel supplier loan, Big Art's, LLC's operating income in the

ordinary course, loan proceeds from Montgomery, borrowing against exempt equity in their primary residence.

11. The first $100,000.00 is cost to replace is born by the state. The total cost is about $250,000.00. Debtors do not believe that replacing the tank system is necessary now or will be necessary to complete the Plan.

12. If necessary, replacement of tank systems would be satisfied by state funds and a loan if and when it proves necessary. Debtor does not anticipate the need to place the fuel system in this or the next option term which would commence in 2019. Debtor is confident that the Plan will not only be substantially consummated by the end of the next option term, the Plan will be completed. If Debtor elects to not exercise subsequent options, Debtors' ability to afford a replacement tank system is moot and not an issue for confirmation.

13. The ADEQ Baseline Assessment Program and availability of state monies dedicated to the removal of underground storage facilities or the permanent closure of the same "in place", challenges any theory that the Debtors' Plan is in unfeasible because of some looming cost. The maximum cost to remove the UST system is $20,000.00 per tank. Debtors or Big Art's, LLC is eligible for up to $20,000.00 per tank. Debtors would bear no cost in such removal efforts. The cost to

25

permanently close a tank or the entire tank system is far less expensive and also covered by the state fund.

14. The duration of the Plan will expire prior to Debtor having to provide notice of its intent to exercise what will be the second post-confirmation exclusive option to extend the Mastick Lease. Therefore, the health of either or both Debtors should not pose a bar to confirmation of the Debtors' Plan.

### B.    Causes of Action

Pursuant to section 1123(b)(3) of the Bankruptcy Code, the Reorganized Debtor shall retain all of the Debtor's causes action pursuant to applicable local, state or federal law. In particular, Debtor retains and identifies that it holds claims against Mastick and any other claims against third parties which relate to either Debtors' claims against Mastick as more particularly identified in multiple places above and the Debtors' First Amended Disclosure Statement. The Debtor has Fennemore Craig as special litigation counsel in connection with any ADEQ compliance matters involving Debtor and to possibly assist Debtors Counsel in litigating the following non-exhaustive list of claims against Mastick, and third parties: common law intentional tort claims, common law unintentional tort claims, common law contract claims, claims under federal law including but not limited to Section 362(k) stay violation sanctions claims, 28 U.S.C. § 1928, and Fed. R. Bankr. P. 9011.

26

### C. Objections to Claims

**Objections**. The Reorganized Debtors or any other party in interest shall serve a copy of an objection upon the Holder of the Claim that was not scheduled, or was scheduled as disputed, contingent, or unliquidated, that has not been allowed by a Final Order of the Bankruptcy Court, as soon as is practicable. Any Claim that was not scheduled and for which no Proof of Claim was filed shall be disallowed.

There shall be no distribution to the holder of a Disputed Claim until the Objection to the Claim has been resolved by a Final Order of the Bankruptcy Court and the Claim has become an Allowed Claim. Payments and distributions on account of each Disputed Claim that is Allowed shall be made in accordance with the provisions of the Plan relating to the class of creditors to which the Holder belongs. At present, only one claim is objected to and that is Proof of Claim #5-2 and Proof of Claim #10, both filed by Mastick.

**Estimations**. The Debtors or Reorganized Debtors may, at any time, request the Bankruptcy Court to estimate any Claim, under section 502(c) of the Bankruptcy Code, regardless of whether the Debtors or Reorganized Debtors previously have objected to such Claim, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim, at any time, including during litigation concerning any objection to such Claim

### D. Vesting

On the Effective Date, the Debtors shall be vested with the remaining property or assets from the Estate, free and clear of all claims, liens, charges, and other interests of creditors arising prior to the filing date, except as provided by the Plan.

27

## VI. Distributions Under the Plan

### A. Manner of Payments

All distributions will be made in the form of cash payments to entities holding Allowed Claims at the addresses listed on the Proof of Claim filed by such entity as the address where payments are to be sent, unless other instructions are received in writing by the Debtors. Payments will be made by check, cashier's check, or wire transfer at the option of the Debtors.

### B. No Distributions to Holders of Disputed Claims

No payments or distributions of any kind will be made on account of any claim listed as disputed, contingent, or unliquidated, until such claim becomes an Allowed Claim, and only to the extent such claim is Allowed. If any Disputed Claim becomes an Allowed Claim after the Effective Date and after a distribution is made to other holders of Allowed Claims in its Class, such claim will receive payment within forty-five (45) days after the Disputed Claim becomes an Allowed Claim and the Order allowing the Claim becomes a final non-appealable order.

### C. Post-Petition Interest, Fees, and Costs

Interest on and fees and expenses, if any, with respect to any Allowed Secured Claim, including but not limited to unpaid professional fees due the holders of such Claims, shall be paid only to the extent permitted by section 506(b) of the Bankruptcy Code from the proceeds of the Collateral securing such Claims. Allowance thereof shall

28

be determined separately for each Class and each subclass. Any interest, fees and expenses paid during the pendency of these Cases to the holder of any Allowed Secured Claim that are not allowable pursuant to Section 506(b) of the Bankruptcy Code shall be credited against and shall reduce the principal amount of any such Allowed Secured Claim.

Except as otherwise provided in this Plan, or in an order of the Bankruptcy Court, no holder of an Allowed Claim shall be entitled to the accrual of post-petition interest or the payment by the Debtors of post-petition interest, attorney's fees or other professional fees on account of such Claim for any purpose.

## VII.   Effect of Plan on Claims

### A.   Effect of Confirmation

Under Bankruptcy Code section 1141(d)(5), an individual Debtor will not be discharged from any debts unless and until: (i) Debtor completes all payments under the Plan and obtains an order of the Bankruptcy Court granting a discharge; (ii) the Bankruptcy Court grants a limited ("hardship") discharge as allowed under Bankruptcy Code section 1141(d)(5)(B); or (iii) the Bankruptcy Court orders otherwise for cause. Therefore the Debtors shall not be discharged from any categories of claims as set forth in the Plan until ordered by the Bankruptcy Court one of the reasons set forth above. Non-dischargeable debts under Bankruptcy Code section 523 will not be discharged unless by separate order of this Court.

29

Holders of claims against the Debtors may not receive any payment or distribution except as otherwise provided for in the Plan, and may not seek any recourse against the Debtors or their assets except as provided for in the Plan. After the Confirmation Date, all holders of Claims will be forever enjoined from taking any action against the Debtors or its property on account of such claim; including the commencement or continuation of any proceeding; enforcing any judgment or award; creating, perfecting, or enforcing any lien; or any other action inconsistent with the terms of the Plan.

## B.     The Debtors' Authority to Compromise and Settle

Pursuant to Bankruptcy Rule 9019(a), the Debtors may compromise or settle any Claim or Interest, or any cause of action against a Debtors or brought by a Debtors upon notice and a hearing. Upon the Effective Date, Debtor's avoidance and preservation claim against Sherman Montgomery shall be approved Bankruptcy Rule 9019(a).

## C.     Right of Setoff

The Debtors may set off against any payment or distribution made pursuant to an Allowed Claim or Guaranty claim of any kind that Debtors may have against the Holder of such an Allowed Claim, Guarantor or Beneficiary of a Guaranty, but the Debtors will not be required to do so. The failure to utilize the right of setoff does not constitute a waiver or release of any claim the Debtors may have against a Holder of an Allowed Claim.

30

## VIII.   Other Provisions

### A.      Binding Effect

The Plan shall be binding on and inure to the benefit of the Debtors, all present and former holders of Claims against and Interests in the Debtors, their respective successors and assigns, including, but not limited to, all parties-in-interest in this Chapter 11 Case.

### B.      Revocation, Withdrawal, or Non-Consummation

The Debtors reserve the right to revoke or withdraw the Plan at any time prior to the Confirmation Date and to file subsequent plans of reorganization.   If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then (i) the Plan shall be null and void in all respects, (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of executory contracts or leases effected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void, and (iii) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (a) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interest in, the Debtors or any other person, (b) prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtors, or (c) constitute an admission of any sort by the Debtors or any other person.

### C.      Plan Modification

The Plan may be corrected or modified, prior or subsequent to Confirmation, or prior to consummation, after notice to interested parties and by Court order as provided by

31

law. The Debtors further retain all rights to modify the Plan prior to Confirmation as permitted by Section 1127 of the Bankruptcy Code. The Plan may be amended or modified prior to Confirmation without leave of Court, so long as notice is provided to Creditors. After Confirmation and with approval of the Court and upon notice to creditors, the Debtors may remedy any defect or omission, or may reconcile any inconsistencies in the Plan or Confirmation Order, so long as such modification does not materially alter or adversely affect the interests of Creditors, to the extent it may be necessary to carry out the purposes and intent of the Plan.

### D.    Severability of Plan Provisions

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

32

### E.  Consequences of Default

If the Reorganized Debtors are unable to perform the terms and conditions of this Plan, it will be in default.  The promissory notes and security agreements held by the Secured Creditors, the assumed lease and the Plan itself create legal and enforceable obligations and provide the respective rights and remedies of each obligation in the event of a default.

### F.  Reorganized Debtors' Action

Upon and after the Confirmation Date, the Debtor shall take such action as is necessary to effectuate this Plan.

### G.  Post-Confirmation Employment of Professionals

After the Effective Date, the Debtors shall have the right to employ professionals, including attorneys, accountants, and other advisors, free of any restrictions imposed by the Bankruptcy Code or Rules.  Fees and costs may be paid for post-confirmation services in the ordinary course without the necessity to seek Bankruptcy Court approval.

### H.  Payment of Statutory Fees

All fees payable pursuant to Section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation shall be paid on or before the Effective Date.  The Debtors shall continue to accrue and pay fees pursuant to 28 U.S.C. § 1930 until the Case is closed, dismissed, or converted.

## I.    Documentation of Plan Implementation

In the event any entity that possesses an Allowed Secured Claim or any other lien against any of the Debtors' Property for which the Plan requires the execution of any documents to incorporate the terms of the Plan, fails to provide a release of its lien or execute the necessary documents to satisfy the requirements of the Plan, the Debtors may record a copy of this Plan or the Confirmation Order with the appropriate governmental agency and such recordation shall constitute the lien release and creation of any necessary and new liens to satisfy the terms of the Plan.  For any Creditor asserting a secured interest in any Property of the Debtors, for which no equity exists in the property for the benefit of the Creditor, the Creditor shall immediately upon the Effective Date of the Plan release its asserted secured interest in the Property.  If the Debtors deem advisable, they may obtain a further Order from the Court that may be recorded in order to implement the terms of the Plan.

## J.    Terms of Injunctions or Stays

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under Sections 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date (excluding any injunctions or stays contained in this Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.

Except as otherwise expressly provided in the Plan or the Confirmation Order, all entities who have held, hold or may hold Claims against, or Interests in, the Debtors will

be permanently enjoined, on and after the Effective Date, from (i) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the property of the Estates or the proceeds of such property, including without limitation property transferred to a buyer (except with respect to liabilities expressly assumed by the buyer), on account of any such Claim or Interest, (ii) creating, perfecting or enforcing any encumbrance of any kind against the property or interest in such property while it remains in the Estates, on account of any such Claim or Interest, and (iii) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due to the Debtor or against the property or interests in property of the Debtors on account of any such Claim or Interest except to the extent the Claim is a Setoff Claim.

### K. Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) the laws of (i) the State of Arizona shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan and (ii) the laws of the state of Arizona shall govern corporate governance matters with respect to the Debtors, in either case without giving effect to the principles of conflicts of law thereof.

### IX. Retention of Jurisdiction

Until such time as all creditors have been paid in accordance with the Plan, the Bankruptcy Court shall retain jurisdiction to the fullest extent authorized by the

35

Bankruptcy Code and United States Code to ensure that the purpose and intent of the Plan are effectuated. While the Bankruptcy Case may be closed, jurisdiction will be retained for re-opening the case if necessary. Jurisdiction shall be exclusive to the extent provided by 28 U.S.C. § 1334(a). The Bankruptcy Court's jurisdiction shall include, but not be limited to:

    (a)    classification and allowance of Claims, by or against the Debtor;

    (b)    resolution of counterclaims against persons filing Claims;

    (c)    allowance of all Claims for damages as a result of rejection of any executory contracts or leases and post-confirmation determination of any alleged default of any executory contract subject to an order of assumption until such time as a discharge of indebtedness is entered under the subchapter of the bankruptcy code;

    (d)    allowance of applications for payment of Administrative Expenses, as well as any other fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code or Rules or the Plan;

    (e)    resolution of all causes of action, controversies, questions, and disputes regarding title to estate assets;

    (f)    interpretation and enforcement of the terms of any instruments issued under or other documentation evidencing the terms of the Plan;

36

(g)    implementation of the provisions of the Plan, including, without limitation, entry of injunctions and other orders in aid of its confirmation and consummation;

(h)    resolution of all matters and controversies regarding state, local, and federal taxes pursuant to applicable provisions of the Bankruptcy Code;

(i)    resolution of any and all applications, adversary proceedings, and contested or litigated matters pending before the Court as of the Effective Date;

(j)    resolution of any complaints for recovery of assets or avoidance of transfers pursuant to the relevant provisions of the Bankruptcy Code;

(k)    correction of any defect, curing of any omission, or reconciliation of any inconsistency in the Plan, Confirmation Order, and any documents executed or to be executed in connection with them;

(l)    approval of any modification to the Plan;

(m)    shortening or extending, for cause, any time fixed for doing any act or thing under the Plan;

(n)    entry of any order, including injunctions, necessary to enforce or protect the title, rights, and powers of the Reorganized Debtor under the Plan;

(o)    entry of a final decree closing the Case; and

(p)    resolution of other matters as may be set forth in the Confirmation Order or which may arise in connection with the Plan or Confirmation Order.

37

## X.  Request for Confirmation and Recommendation

The Debtors believe confirmation of this Plan is the best alternative and will provide all holders of Allowed Claims with the best possible recovery in light of the provisions of the bankruptcy code and the alternatives to confirmation.  Accordingly, the Debtors recommend that Holders of Impaired Claims vote to accept the Plan and return the Ballots as directed in the Plan and Disclosure Statement.  The Debtors request confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any impaired Class that does not accept the Plan.


RESPECTFULLY SUBMITTED this 16th day of July 2018.


The Law Offices of C.R. Hyde, PLC

By:  ___/s/ C.R. Hyde_____

Charles R. Hyde, Attorney for the Debtors

38